Opinion by JUDGE TAUBMAN
¶ 1 Defendant, Joshua Elliot Wingfield, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree possession of contraband, dangerous instrument. We affirm.
I. Background
¶ 2 Wingfield shared a cell with two other inmates at the Arapahoe County Jail. Deputies received a report of a possible escape attempt. Through an intercom, they heard "scraping" and "banging" sounds coming from the cell. As one deputy approached the cell, other deputies monitoring the intercom heard Wingfield say: "Fuck, cops. Flush it. Flush it." When deputies entered the cell, they discovered a trench had been dug around the perimeter of the window. They further found a crutch that had a flattened end, metal bars, a portion of a metal drain or grate, and a shank.
¶ 3 Wingfield was charged with first degree possession of contraband, attempted escape with a pending felony, conspiracy to commit escape, and three habitual criminal counts. The court ultimately granted Wingfield's motion for judgment of acquittal on the escape counts because the prosecution had not presented any evidence that Wingfield was in custody for a felony offense.
*872 A. Competency Hearing
¶ 4 At a July 16, 2007 hearing, the prosecutor informed the court that a doctor at the jail had recommended that Wingfield undergo a psychiatric evaluation at the state hospital. The court made a preliminary finding of incompetency and set a competency review hearing.
¶ 5 That hearing was held on October 11, 2007, but Wingfield was unable to attend because he was being held in the Pueblo County Jail on assault charges. Defense counsel waived Wingfield's appearance, and the court found Wingfield competent to proceed.
¶ 6 Wingfield subsequently requested a second competency hearing on January 9, March 12, and April 23, 2008, on April 27 and April 29, 2009. The trial court denied Wingfield's request for a second competency hearing on each occasion. At a hearing on February 11, 2011, Wingfield moved for a new trial based on his alleged incompetence throughout trial, and the trial court denied that motion.
B. Choice of Evils
¶ 7 On March 12, 2009, Wingfield informed the prosecution that he wished to pursue a choice of evils defense. According to Wingfield, he was placed in a cell with two inmates, Matthew McGary and Brandon Hoyt, who had already started to effectuate an escape from the prison by knocking off chunks of concrete around their cell's window. McGary and Hoyt informed Wingfield that they were members of a white supremacist gang. McGary allegedly told Wingfield that if he did "anything to stop [the breakout], that he was a dead man. That he would be labeled a snitch and they would kill him."
¶ 8 After this threat, Wingfield allegedly began pursuing alternatives to going along with the escape, filing several inmate request forms with the Arapahoe County sheriffs, requesting his removal from the cell. In the filings, Wingfield did not specify his reasons for seeking removal. Only when Wingfield's requests were denied did he decide to go along with his cellmates' escape plan.
¶ 9 The prosecution subsequently filed a motion in limine in which it argued that defense counsel had not submitted a factual basis supporting the choice of evils defense and, therefore, the court should not allow Wingfield to pursue it.
¶ 10 The trial court granted the prosecution's motion, finding that, although Wingfield faced an imminent threat, he could have reached a point of safety by telling jailers at any time what was going on and requesting to be removed from his cell.
¶ 11 Wingfield was convicted of possession of contraband. The court adjudicated him a habitual offender and he was sentenced to eighteen years in the custody of the Department of Corrections.
II. Waiver of Presence at Competency Hearing
¶ 12 Wingfield contends that the trial court erred when it allowed defense counsel to waive his presence at the competency hearing. We discern no reversible error.
A. Standard of Review
¶ 13 Whether a trial court violated a defendant's right to be present is a constitutional question that is reviewed de novo. People v. Price, 240 P.3d 557, 560 (Colo. App. 2010).
¶ 14 Wingfield contends that his claim should be reviewed under the constitutional harmless error standard. See Luu v. People, 841 P.2d 271, 274-75 (Colo. 1992). Constitutional harmless error requires the reversal of a defendant's conviction that occurred as a result of the trial court's error unless the reviewing court finds the error harmless beyond a reasonable doubt. Blecha v. People, 962 P.2d 931, 942 (Colo. 1998).
¶ 15 The People disagree, arguing that the plain error standard applies to unpreserved constitutional claims. See People v. Miller, 113 P.3d 743, 748 (Colo. 2005).
¶ 16 Although we note that Wingfield's absence from the competency hearing made it impossible for him to object to defense counsel's waiver of his right to presence, we need not resolve this issue because we conclude that the trial court did not violate Wingfield's constitutional rights.
*873 B. Applicable Law
¶ 17 A defendant has a right to be present at every critical stage of a criminal trial. People v. Ragusa, 220 P.3d 1002, 1009 (Colo. App. 2009). Although no Colorado appellate court has addressed the issue, every federal court of appeals to address the issue, as well as various state courts, has held that competency hearings are such "critical stages" for the purposes of the Sixth Amendment right to counsel. United States v. Ross, 703 F.3d 856, 874 (6th Cir. 2012) ; Raymond v. Weber, 552 F.3d 680, 684 (8th Cir. 2009) ; United States v. Collins, 430 F.3d 1260, 1264 (10th Cir. 2005) ; Appel v. Horn, 250 F.3d 203, 215 (3d Cir. 2001) ; United States v. Klat, 156 F.3d 1258, 1262 (D.C. Cir. 1998) ; United States v. Barfield, 969 F.2d 1554, 1556 (4th Cir. 1992) ; Sturgis v. Goldsmith, 796 F.2d 1103, 1109 (9th Cir. 1986) ; State v. Giles, No. CA-977, 1991 WL 271698, at *3 (Ohio Ct. App. Nov. 18, 1991) (unpublished opinion) ("A competency hearing is a critical stage of the proceedings."); State v. Heddrick, Nos. 57420-5-I, 57469-8-I, 2007 WL 2411354 (Wash. Ct. App. Aug. 27, 2007) (unpublished opinion); see also Ronald A. Parsons, Jr., Being There: Constructive Denial of Counsel at a Competency Hearing as Structural Error under the Sixth Amendment, 56 S.D.L.Rev. 238, 242 (2011) ("[E]very federal court of appeals [to address whether a competency hearing is a critical stage] has answered it affirmatively."). We join these courts in holding that a competency hearing is a critical stage of a criminal prosecution.
¶ 18 However, the right to presence at critical stages is not absolute. Due process only requires a defendant's presence " 'to the extent that a fair and just hearing would be thwarted by his [or her] absence.' " Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) ). Due process does not require the defendant's presence when his or her presence would be useless. Luu, 841 P.2d at 273-75.
¶ 19 Further, the right to presence may be waived. In such instances, the trial court is responsible for ensuring that the defendant's waiver is voluntary, knowing, and intelligent. See Taylor v. Illinois, 484 U.S. 400, 417-18 & n.24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ; Price, 240 P.3d at 560. However, defense counsel cannot waive a defendant's right to presence at critical stages of criminal proceedings. People v. Curtis, 681 P.2d 504, 511 (Colo. 1984).
C. Analysis
¶ 20 Here, the trial court improperly allowed Wingfield's defense counsel to waive his right to presence at the October 11, 2007, competency hearing. The trial court made no efforts to ensure that Wingfield knew of his right to be present at the competency hearing and voluntarily waived it. See Price, 240 P.3d at 560 ("The trial court is responsible for ensuring that the defendant's waiver of the right to be present at trial is voluntary, knowing, and intelligent.").
¶ 21 However, although we conclude that competency hearings are critical stages of criminal proceedings, Wingfield has failed to show how his presence would have been useful to his defense. See Luu 841 P.2d at 275 ("[T]he privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.' " (quoting Stincer, 482 U.S. at 745, 107 S.Ct. 2658 )).
¶ 22 A defendant is competent to stand trial or be sentenced if he or she is capable of understanding the nature and course of the proceedings against him or her, participating and assisting in the defense, and cooperating with defense counsel. People v. Corichi, 18 P.3d 807, 810 (Colo. App. 2000).
¶ 23 Wingfield asserts that, had he been present, his words and conduct would have demonstrated his incompetence. However, in Wingfield's subsequent court appearances, the trial court had ample opportunity to observe Wingfield and concluded that although he often rambled, he understood the court proceedings and was not incompetent.
¶ 24 Wingfield further argues that he could have assisted his counsel at the competency hearing. However, Wingfield himself argues that he was incompetent to proceed to trial, *874 casting doubt on any useful role he could have played at the competency hearing and lessening the importance of his presence at that hearing. Further, Wingfield does not explain how he could have assisted his attorney at the competency hearing.
¶ 25 Therefore, the trial court did not violate Wingfield's constitutional rights by holding the competency hearing in his absence.
III. Denial of Second Competency Evaluation and Hearing
¶ 26 Wingfield contends that the trial court denied his right to due process and abused its discretion by denying his request for a second competency evaluation on six occasions.[1] He further asserts that the trial court erred by not following the statutory procedures of section 16-8-110(2)(a), C.R.S. 2007, including not notifying him of a date by which to request a hearing for a second competency evaluation.[2] Ch. 44, sec. 1, § 39-8-110, 1972 Colo. Sess. Laws 229. We discern no reversible error.
A. Standard of Review
¶ 27 We review a trial court's decision not to permit a second competency hearing for an abuse of discretion. People v. Morino, 743 P.2d 49, 52 (Colo. App. 1987). Whether a court fails to follow appropriate competency procedures presents a question of law subject to de novo review. Id.
¶ 28 We recognize that in People v. Matthews, 662 P.2d 1108, 1111 (Colo. App. 1983), a division of this court applied constitutional harmless error review to a trial court's violation of the same competency procedures at issue in Wingfield's trial. However, Matthews was decided prior to the supreme court's decision in People v. Miller . In Miller , the Court remedied the "conflict ... concerning the appropriate standard of review for unobjected-to constitutional errors," holding that "constitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim ... by raising a contemporaneous objection." 113 P.3d at 748-49.
¶ 29 Wingfield did not object to the trial court's statutory procedural errors, therefore we review for plain error. Hagos v. People, 2012 CO 63, ¶ 14, 288 P.3d 116, 120.
¶ 30 Plain error addresses error that is both "obvious and substantial." People v. Stewart, 55 P.3d 107, 120 (Colo. 2002) (internal quotation marks omitted). We have recognized as plain error those errors that "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." People v. Sepulveda, 65 P.3d 1002, 1006 (Colo. 2003).
¶ 31 To the extent that Wingfield claims the denial of a second competency examination denied him due process, we review for constitutional harmless error. A constitutional error may be characterized as harmless only when the reviewing court determines that the error was harmless beyond a reasonable doubt, that is, that there is no reasonable possibility that the error might have contributed to the conviction. Hagos, 288 P.3d at 119.
B. Applicable Law
¶ 32 Due process prohibits the trial of an incompetent defendant. Dusky v. United States, 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ; Bloom v. People, 185 P.3d 797, 808 (Colo. 2008), superseded by statute as stated in People in Interest of W.P ., 2013 CO 11, 295 P.3d 514. A defendant is incompetent if the defendant is suffering from a mental disease or defect which renders him or her incapable of understanding the nature and course of the proceedings *875 against him or her or of participating or assisting in the defense or cooperating with defense counsel. Bloom, 185 P.3d at 808 ; see also Dusky, 362 U.S. at 402, 80 S.Ct. 788 (The test for competence is whether defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him."). If a "sufficient doubt" of competency has been raised, a trial court's failure to make a competency determination violates a defendant's right to due process. People v. Kilgore, 992 P.2d 661, 663 (Colo. App. 1999). Similarly, a defendant's right to due process is violated if a trial court does not accord the accused an adequate hearing concerning his or her competency. Corichi, 18 P.3d at 810.
¶ 33 Both parties agree that the current statutory procedures for competency hearings set forth in sections 16-8.5-101 to - 118, C.R.S. 2014, do not apply in this case.[3] Rather, we apply repealed section 16-8-110(2)(a), C.R.S. 2007. Ch. 44, sec. 1, § 39-8-110, 1972 Colo. Sess. Laws 229.
¶ 34 That law required a court to suspend any criminal proceeding whenever a question of a defendant's competency to proceed was raised. 1972 Colo. Sess. Laws at 229; Morino, 743 P.2d at 51. The court was then required to make a preliminary finding that the defendant was or was not competent to proceed. 1972 Colo. Sess. Laws at 229. It was also required to immediately notify the parties of the time within which to request a hearing upon such finding. Id . Upon timely written request of either party, the court was required to hold a competency hearing and could "commit the defendant for a competency examination prior to the hearing if adequate psychiatric information [was] not already available." Id . at 230. If neither party requested a hearing in writing, the preliminary finding became a final determination. Id . Nevertheless, there was an initial presumption of competency, and a defendant was not entitled to a competency examination or hearing merely by making a demand for one, particularly if that demand was made after the proceeding had commenced. People v. Seigler , 832 P.2d 980, 982 (Colo. App. 1991), superseded by statute as stated in People v. Garcia , 28 P.3d 340 (Colo.2001).
¶ 35 To sufficiently "raise a question" of competency, the party requesting a competency examination had to give the court "reason to believe that the defendant [was] incompetent." Morino, 743 P.2d at 51. It was only when a defendant's representations to the court, either alone or in conjunction with other evidence, raised a "bona fide doubt" of the defendant's competence that a court was required to address the issue. Id . ; Kilgore, 992 P.2d at 663.
¶ 36 Because the trial court had ample opportunity to observe a defendant's actions and general demeanor, it had substantial discretion in determining whether a legitimate issue respecting his or her competency had been raised. Kilgore, 992 P.2d at 663-64.
¶ 37 Once the trial court had a "bona fide doubt" of the defendant's competency, Morino, 743 P.2d at 51 (internal quotation marks omitted), it had the discretion to order a competency examination or other investigation if it believed that the information before it was insufficient to make a preliminary finding of competency, 1972 Colo. Sess. Laws at 229.
¶ 38 Finally, the parties assume that former section 16-8-110(2)(a)'s procedures applied equally to requests for second competency examinations and hearings, and we will do the same.
C. Analysis
¶ 39 Wingfield's contentions here involve claims of three separate errors. First, Wingfield claims that the trial court erred by not suspending the proceedings and making a preliminary determination of competency on each occasion when he requested a second competency examination. Second, Wingfield asserts that the trial court erred by not notifying the parties of a time within which *876 to request a hearing based on its preliminary determination of competency and by not holding such a hearing. Finally, Wingfield asserts that the trial court abused its discretion and denied his right to due process by finding him competent to proceed and denying him a second competency examination.
1. Preliminary Determination of Competency
¶ 40 On January 9 and March 12, 2008, after Wingfield moved for a second competency evaluation, the trial court did not suspend the proceedings and make a preliminary determination of his competency. Even assuming that Wingfield's behavior on those occasions raised a "bona fide doubt" of his competency in the trial court, we nevertheless conclude that any error in not suspending the proceedings and making a preliminary determination of competency was not plain.
¶ 41 Wingfield has not shown that the absence of a preliminary finding of competency on January 9 and March 12, 2008, resulted in his conviction. On the three subsequent occasions where the court properly issued preliminary rulings on Wingfield's competency, it found Wingfield competent to proceed. By the date of those later rulings, the trial court had had more time to observe Wingfield's in-court behavior, yet still denied his request for a second competency hearing.
¶ 42 Therefore, we conclude that, even if we assume the trial court erred in not making a preliminary finding of competency on these two occasions, those errors were not plain, since they did not cast doubt on the reliability of the judgment of conviction.
2. Notification of Time to Request Hearing
¶ 43 On all five occasions, the trial court did not notify the parties of a time within which to request a competency hearing. Thus, we conclude that the trial court did not follow the procedures set forth in former sections 16-8-110 and - 111 in this respect. Nevertheless, we again conclude that the trial court's statutory procedural error did not constitute plain error.
¶ 44 Wingfield has not shown that the trial court's error in not notifying the parties of a time within which to request a hearing upon its preliminary findings of competency cast serious doubt on the reliability of his conviction. Even if the court had notified Wingfield of the time within which to request a hearing on its preliminary findings, and he had requested such a hearing, Wingfield has not demonstrated that he had raised a "bona fide doubt" about his competence such that the trial court would have either ordered a second competency examination or held a competency hearing. See Morino, 743 P.2d at 51 (internal quotation marks omitted).
¶ 45 On the first three occasions that the trial court denied Wingfield's request for a second competency examination, January 9, March 12, and April 23, 2008, Wingfield did not support his request with evidence of his incompetence. The only medical evidence considered on these dates was the initial competency examination from September 2007 finding him capable of understanding reality and competent to proceed. Wingfield has not shown what evidence he would have introduced during a second competency hearing that was not already considered by the court and that would have led the trial court to find him incompetent.
¶ 46 Throughout trial, Wingfield referenced the opinions of various psychiatrists who questioned his mental state. For example, at the March 12, 2008 hearing, Wingfield told the court that a psychiatrist at the detention facility where he was detained had diagnosed him as suicidal and recommended he undergo a second competency assessment. Although he had ample opportunity, Wingfield never obtained an affidavit from these psychiatrists and never made an offer of proof of his incompetency to proceed.
¶ 47 Further, although it never held a formal competency hearing, at the April 27, 2009 hearing, the trial court telephone Dr. Mozer, Wingfield's psychiatrist, and allowed the parties to ask him numerous questions regarding Wingfield's mental health status. Dr. Mozer testified that Wingfield understood right from wrong and could avoid doing wrong. Dr. Mozer opined that further testing might be warranted to determine if *877 Wingfield's paranoia precluded him from assisting with his defense, but also indicated that if Wingfield took his prescribed medications, it could help control his paranoia and allow him to better assist in his defense. Ultimately, Dr. Mozer did not offer an opinion on whether Wingfield was competent to stand trial and did not conclude he was incompetent to stand trial under the Bloom standards discussed above.
¶ 48 Immediately following the interview, the trial court denied Wingfield's request for a second competency examination, finding that Wingfield had a rational understanding of the nature "of the charges ... and possible consequences." Wingfield has not shown why a hearing would have resulted in a different finding by the trial court.
¶ 49 Therefore, we conclude that while the trial court erred in not setting a date within which to formally request a hearing based on its preliminary findings of competency, any error did not constitute plain error.
3. Denial of Second Competency Evaluation
¶ 50 Having concluded that the trial court's procedural errors did not constitute plain error, we also conclude that the trial court did not abuse its discretion or violate Wingfield's due process rights when it denied his requests for a second competency examination.
¶ 51 Wingfield requested a second competency examination on five occasions throughout trial. On three occasions, April 23, 2008, and April 27 and 29, 2009, the court took Wingfield's request under advisement and issued rulings finding Wingfield competent to proceed, denying his request for a second competency examination.
¶ 52 For example, on the third day of trial, Wingfield requested a second competency examination based on Dr. Mozer's telephone testimony stating that Wingfield was suffering from paranoid delusions that were interfering with his medical treatment and his ability to assist in his defense. The trial court denied the motion, stating that based on both its observations of Wingfield at trial and conversations it had had with him, Wingfield could understand the proceedings and his predicament. In so doing, the trial court implicitly made a preliminary finding of Wingfield's competency.
¶ 53 Wingfield relies on his general behavior throughout trial and his history of mental illness to argue that the trial court abused its discretion in denying his requests for a second examination. However, that Wingfield was being treated for mental health issues, rambled and made inappropriate comments, and became upset and expressed paranoid thoughts after the court denied his motions, does not demonstrate that he was incapable of understanding the proceedings and assisting counsel. See Jermyn v. Horn, 266 F.3d 257, 293 (3d Cir. 2001) (The defendant's "psychiatric history [and] history of strange behavior ... do not necessarily suggest that, because of his mental illness, [the defendant] was incapable of understanding the proceedings and assisting in his defense."); Bloom, 185 P.3d at 810 (defendant competent despite her "near hysterical" behavior at first court appearance).
¶ 54 Finally, although at various times Wingfield referenced the opinions of psychiatrists who questioned his mental state, he never obtained an affidavit from any of these psychiatrists and never made an offer of proof of his incompetence to proceed.
¶ 55 Even if we assume that the trial court abused its discretion in denying Wingfield a second competency examination, we conclude that any error was harmless beyond a reasonable doubt. Wingfield's first competency examination found him competent. Further, the trial court had ample opportunity to observe Wingfield's actions and general demeanor throughout trial. It heard testimony from Dr. Mozer indicating that Wingfield could conceivably control his paranoia and assist with his defense by taking his medication. Finally, Wingfield never made an offer of proof about what evidence to establish his incompetence could be presented, as required by Dusky and Bloom, at either a competency hearing or during a second competency examination.
¶ 56 Therefore, we conclude that the trial court did not abuse its discretion in denying *878 Wingfield's request for a second competency examination. We similarly conclude that the trial court did not violate Wingfield's right to due process by allowing him to be tried despite his alleged incompetence,' and we further conclude that, even if the court abused its discretion, any error was harmless beyond a reasonable doubt.
IV. Denial of Choice of Evils Defense
¶ 57 Wingfield contends that the trial court erred when it denied his choice-of-evils defense. As noted, he argues that because his cellmates threatened to kill him if he did not assist in their escape attempt, he was justified in assisting them. We disagree.
A. Standard of Review
¶ 58 When a defendant challenges a trial court's failure to instruct a jury on the choice-of-evils defense, a reviewing court must determine, as a matter of law, whether the defendant's offer of proof, considered in the light most favorable to the defendant, was substantial and sufficient to support the defense. People v. Al-Yousif, 206 P.3d 824, 831 (Colo. App. 2006).
¶ 59 A trial court commits reversible error if it improperly disallows an affirmative defense because it has the effect of impermissibly lowering the prosecution's burden of proof. Vega v. People, 893 P.2d 107, 111 (Colo. 1995) ; People v. Grenier, 200 P.3d 1062, 1074 (Colo. App. 2008).
B. Applicable Law
¶ 60 Under the choice of evils doctrine, acts that would otherwise be criminal may be justifiable if they were performed out of an immediate necessity to prevent an imminent harm from occurring. § 18-1-702(1), C.R.S. 2014. A choice of evils defense requires that the defendant make a sufficient offer of proof, establishing: (1) all other potentially viable and reasonable alternative actions were pursued or shown to be futile; (2) the action taken had a direct causal connection with the harm sought to be prevented and would have abated the harm; and (3) the action taken was an emergency measure pursued to avoid a specific, definite, and imminent injury. Andrews v. People, 800 P.2d 607, 610 (Colo. 1990).
C. Analysis
¶ 61 Here, the trial court found that, although Wingfield faced an imminent threat, he had viable alternatives to going along with the escape. Specifically, the trial court found that he could have reached a point of safety by telling jailers at any time what was going on and by requesting to be removed from his cell.
¶ 62 We conclude the trial court did not err in making this determination.
V. Conclusion
¶ 63 The judgment is affirmed.
JUDGE TERRY and JUDGE RICHMAN concur.

Wingfield asserts that he requested a second competency hearing on six occasions throughout the proceedings. However, as noted, our review of the record shows that Wingfield requested a second competency hearing on only five occasions. At the February 11, 2011, hearing, Wingfield did not request a second competency hearing; rather he moved for a new trial based on his alleged incompetence throughout the trial.

As discussed below, the parties agree that the former statutory procedures apply to Wingfield's case. Although Wingfield argues on appeal that he was denied the right to a second competency evaluation, the applicable statute referred only to a competency "examination." Accordingly, we will construe Wingfield's contention as a right to a competency examination under the applicable statute.

The current statute, section 16-8.5-103(3) -(5), C.R.S.2014, provides for requesting a second evaluation, but the former statute did not contain any express provision for a second evaluation or examination. See Ch. 44, sec. 1, §§ 39-8-110, -111, 1972 Colo. Sess. Laws 229.