Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 10, 2018

**2018 CO 70**

**No. 15SC163, <u>Zoll v. People</u>—Disclosure—In Camera Review—Critical Stage.**

The supreme court holds that when an appellate court determines that the trial court erred in failing to disclose certain documents from a file reviewed in camera, the proper remedy is to remand the case to the trial court with instructions to provide the improperly withheld documents to the parties and to afford the defendant an opportunity to demonstrate that there is a reasonable probability that, had the documents been disclosed before trial, the result of the proceeding would have been different. The supreme court also holds that, even if the court of appeals erred in determining that replaying a small portion of a recording in the courtroom during deliberations was not a critical stage of the proceeding that required the defendant's presence, any error in failing to secure the defendant's attendance was harmless beyond a reasonable doubt.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2018 CO 70

**Supreme Court Case No. 15SC163**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA2316

**Petitioner:**

Matthew J. Zoll,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
September 10, 2018

**Attorneys for Petitioner:**
Megan Ring, Public Defender
Tracy C. Renner, Deputy Public Defender
 *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Melissa D. Allen, Senior Assistant Attorney General
 *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 A jury found petitioner, Matthew Zoll, guilty of second degree assault on a peace officer, criminal impersonation, and two counts of resisting arrest. The trial court subsequently adjudicated Zoll a habitual criminal and sentenced him to eighteen years in the Department of Corrections. Zoll appealed, and a division of the court of appeals affirmed his convictions in a unanimous, unpublished opinion. We granted certiorari to determine: (1) the proper remedy when an appellate court concludes that the trial court incorrectly failed to disclose certain documents from a responding officer's personnel file; and (2) whether replaying a 911 recording[1] for the jury in the courtroom during deliberations is a critical stage of the proceeding requiring the defendant's presence.[2]

¶2 We hold that the court of appeals erred in assessing whether the nondisclosure of documents in a responding officer's personnel file affected the outcome of the trial.

---

[1] The recording is actually of police radio communications. However, because the parties refer to it as a "911 recording," we do the same here for the sake of consistency.

[2] Specifically, we granted certiorari on the following issues:

1. Whether an appellate court, having concluded that records relating to a police officer's credibility should have been disclosed prior to trial, must remand the case to the trial court to determine whether a new trial is required.

2. Whether the court of appeals applied an incorrect legal standard for determining whether a new trial is required.

3. Whether the court of appeals erred in concluding that replaying a 911 recording for the jury during deliberations was not a critical stage of the proceedings requiring petitioner's presence.

Because the first two issues go hand-in-hand, we address them together.

Instead, the court of appeals should have remanded the case to the trial court with directions to disclose the improperly withheld documents to the parties and to afford Zoll an opportunity to demonstrate that there is a reasonable probability that, had the documents been disclosed to him before trial, the result of the proceeding would have been different. We further hold that, even if replaying the 911 recording for the jury in the courtroom during deliberations could be deemed a critical stage of the proceeding, Zoll's absence was harmless beyond a reasonable doubt. Therefore, we decline to address whether the court of appeals correctly decided that Zoll's absence did not occur during a critical stage of the proceeding. Accordingly, we reverse in part, affirm in part—albeit on different grounds—and remand to the court of appeals with instructions to return the case to the district court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶3 Deputy Mitchell was on patrol around 2:00 a.m. when he discovered a car parked in a construction area. He became suspicious, so he pulled up behind it. Inside he found Zoll in the passenger seat and Zoll's friend in the driver's seat. He chatted with them, took their names, and walked back to his patrol car to check the information provided. Zoll, who had no form of identification and had given a false name, was acting nervous and looking back in the direction of the patrol car. As Deputy Mitchell returned with his gun drawn to talk to Zoll, things quickly went south, although the jury heard different versions of what occurred. According to Deputy Mitchell, Zoll opened his door and attacked him; but according to Zoll's friend, Zoll tried to flee and

struggled with the deputy in the process. Zoll was subsequently charged with multiple crimes, including assault on a peace officer.

¶4 Not surprisingly, whose story held water became a central issue in the case. Before trial, Zoll served a subpoena on Deputy Mitchell's employer to obtain information from the deputy's disciplinary file. Zoll specifically requested records related to any internal affairs investigations, criminal charges, and complaints that might indicate a "departure from the truth." Deputy Mitchell's employer tendered the records requested to the trial court which, in turn, reviewed them in camera to protect the deputy's privacy. The trial court performed a balancing test, weighing the deputy's expectation of privacy against Zoll's interest in defending himself, and then disclosed four sets of documents. As mentioned, following a jury trial, Zoll was convicted of assault on a peace officer, two counts of resisting arrest, and criminal impersonation.

¶5 On appeal, Zoll asked a division of the court of appeals to review the disciplinary records subpoenaed in case the trial court had missed something. The division did so and concluded that the trial court should have disclosed one additional set of documents, which related to an August 2010 incident (the "August 2010 documents"). However, it declined to reverse, holding that the undisclosed records "did not affect the outcome of the trial and was harmless beyond a reasonable doubt."

¶6 Zoll also contended that his presence was constitutionally required when, at the jury's request, the trial court replayed a 911 recording in the courtroom during deliberations. Shortly after receiving the jury's request, the trial court asked the Sheriff's deputies to escort Zoll, who was in custody, back into the courtroom so that he

4

could be present when the 911 recording was replayed. After waiting approximately twenty minutes, defense counsel announced that he was "fine with waiving" Zoll's appearance. The trial court accepted counsel's purported waiver, ordered the jury brought in, and replayed the 911 recording outside Zoll's presence. Zoll urged the division to reverse his convictions, arguing this was a critical stage of the criminal proceeding that he had a constitutional right to attend. The division disagreed. It concluded that replaying the recording was not a critical stage of the proceeding requiring Zoll's presence.

## II. Analysis

¶7 Zoll avers that the court of appeals erred in assessing whether the nondisclosure of the August 2010 documents affected the outcome of the trial. Rather, asserts Zoll, the court of appeals should have remanded the case to the trial court with instructions to disclose the improperly withheld documents to the parties and to give Zoll an opportunity to show that a reasonable probability exists that, had the documents been disclosed to him before trial, the result of the proceeding would have been different. Zoll further maintains that replaying the 911 recording during deliberations was a critical stage of the proceeding at which he had a constitutional right to be present. We address each contention in turn.

### A. Proper Remedy for Trial Court's Erroneous Failure to Disclose Documents Following In Camera Review

¶8 We have not had occasion to address the proper remedy when, following an in camera review, the trial court provides the parties access to some, but not all, of the

5

documents that should be disclosed. In determining that a remand was not necessary, the court of appeals relied on People v. Kyle, 111 P.3d 491 (Colo. App. 2004). There, the defendant claimed that the trial court erred in denying him access to records of the child sexual assault victim maintained by the Department of Human Services ("DHS") and a treatment facility. Id. at 503. A division of the court of appeals disagreed, noting that the defendant received a copy of certain notes from the victim's psychotherapist related to the allegations of sexual abuse brought against him. Id. Although the division acknowledged that the trial court neither disclosed nor reviewed the rest of the documents, it concluded, based on its own in camera review, that reversal was not required because "none of those documents would have changed the outcome of any pretrial proceeding or defendant's trial." Id. at 504.

¶9    Kyle relied exclusively on Exline v. Gunter, 985 F.2d 487 (10th Cir. 1993), for the proposition that when a trial court errs in failing to conduct an in camera review of DHS records, "reversal is not required if an appellate court can conclude, upon review of the records, that the information in the files would probably not have changed the outcome of the defendant's trial, or if the nondisclosure was harmless beyond a reasonable doubt." Kyle, 111 P.3d at 504. But nothing in Exline supports this statement. In Exline, a federal habeas corpus proceeding, the United States Court of Appeals for the Tenth Circuit agreed with the federal district court's finding that the defendant's right to due process was violated by the state trial court's failure to conduct an in camera review of certain DHS records related to the child sexual assault victim. 985 F.2d at 488–89. The court, therefore, declined to disturb the district court's decision to

6

hold in abeyance the habeas corpus petition until the state trial court conducted an in camera review of the DHS records. Id. As the court explained, the state trial court had yet to determine whether the records contained information that probably would have changed the outcome of the defendant's trial. Id. at 491. Thus, neither the appellate court nor the federal district court in Exline assessed whether the nondisclosure of documents affected the outcome of the trial or was harmless beyond a reasonable doubt; rather, that determination was left to the state trial court in the first instance on remand.

¶10     Six years after Kyle was decided, a different division of the court of appeals addressed a similar issue in People in Interest of A.D.T., 232 P.3d 313 (Colo. App. 2010). In A.D.T., A.D.T. appealed her adjudications for acts which, if committed by an adult, would have constituted unlawful sexual contact and harassment. Id. at 315. The division concluded that the juvenile court erred in failing to review in camera eight of the nine DHS files of the victim, as well as by failing to disclose certain documents from the file it did review. Id. The question remained, however, as to "whether the failure to disclose such documents previously entitle[d] A.D.T. to a new trial." Id. at 320. The division concluded that the juvenile court had to consider the issue first on remand:

> [B]ecause A.D.T. bears the burden of establishing prejudice, see [People v. Jowell, 199 P.3d 38, 47 (Colo. App. 2008)], the court shall disclose the pertinent documents to the parties and give A.D.T. an opportunity to demonstrate a reasonable probability that, had these records been disclosed to her, the result of the proceeding would have been different. See People v. Hustead, 74 Cal. App. 4th 410, 87 Cal. Rptr. 2d 875, 884–85 (1999) (adopting such a procedure on similar facts, and holding, "On remand, the appellant will have an opportunity to determine if he would have been able to present any additional evidence at trial as a result of any

7

discoverable information."); see also United States v. McGowan, 423 F.2d 413, 418–19 (4th Cir. 1970) (in a case involving grand jury minutes, the court opined that once it had determined that certain of those minutes should have been disclosed to the defense, the appropriate procedure was for defense counsel to review those minutes to determine what in them was "useful"); Commonwealth v. French, 531 Pa. 42, 611 A.2d 175, 179–80 (1992) (the question of prejudice resulting from the trial court's erroneous failure to order the production of certain witness statements to the defendant should not be determined without first permitting defense counsel to view the statements in question with the eye of an advocate and to argue to the trial court their impeachment value).

Id. at 318.

¶11    We agree with the division's approach in A.D.T. and adopt it now. It is the defendant's burden to show prejudice as a result of a trial court's erroneous nondisclosure, and an appellate court cannot review the improperly withheld documents with an advocate's eye. As the Pennsylvania Supreme Court recognized in French, "[m]atters contained in a witness's statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness." 611 A.2d at 179 (quoting Commonwealth v. Grayson, 353 A.2d 428, 429 (Pa. 1976)). This is particularly so where, as here, the case turns on the witnesses' credibility and the undisclosed information relates directly to the credibility of the prosecution's primary witness. Of course, defense counsel is also in the most suitable position to evaluate whether additional evidence may have been discovered before trial as a result of the undisclosed information. Hustead, 87 Cal. Rprt. 2d at 884–85.

¶12    Thus, we hold that when an appellate court determines that the trial court erred in failing to disclose certain documents from a file reviewed in camera, the proper

8

remedy is to remand the case to the trial court with instructions to provide the documents to the parties and to afford the defendant an opportunity to demonstrate a reasonable probability that, had the documents been disclosed before trial, the result of the proceeding would have been different. On remand, the trial court, in its discretion, should determine the manner in which to allow the defendant to attempt to make the requisite showing of prejudicial error. A.D.T., 232 P.3d at 318, 320. If the trial court concludes there is a reasonable probability that the result of the trial would have been different, then it must grant the defendant a new trial. Id. at 321. On the other hand, if the trial court finds no such reasonable probability exists, then it may leave in place its judgment of conviction, subject to the defendant's right to appeal. Id.

¶13 Because the division here failed to remand the case to the district court consistent with the holding in A.D.T. and, instead, assessed whether the nondisclosure of the August 2010 documents affected the outcome of the proceeding, we reverse its judgment. We disapprove the holding in Kyle to the extent it is inconsistent with this opinion.

### B. Zoll's Absence as 911 Recording Was Replayed During Deliberations

¶14 Zoll next claims that the court of appeals erred in determining that replaying the 911 recording in the courtroom during deliberations was not a critical stage of the proceeding that required his presence. We conclude that, even if Zoll is correct, any error by the trial court in accepting the purported waiver of his appearance was harmless beyond a reasonable doubt.

9

## 1. Standard of Review

¶15 "Whether a trial court violated a defendant's right to be present is a constitutional question that is reviewed de novo." People v. Guzman-Rincon, 2015 COA 166M, ¶ 29, 369 P.3d 752, 758; see also People v. Bergerud, 223 P.3d 686, 693 (Colo. 2010) (de novo standard applies to review of a waiver of a constitutional right). The effectiveness of a waiver of the right to be present is likewise reviewed de novo. People v. Price, 240 P.3d 557, 560 (Colo. App. 2010).

¶16 We have clarified that if a constitutional trial error was not preserved, the claim is subject to plain error analysis, not harmless error analysis. People v. Miller, 113 P.3d 743, 749–50 (Colo. 2005). In Miller, we explained "that constitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection." Id. at 749. Thus, only where an error in the denial of a defendant's right to be present was preserved through a contemporaneous objection will we review for constitutional harmless error. People v. Payne, 2014 COA 81, ¶ 7, 361 P.3d 1040, 1042.

¶17 The People urge us to apply plain error analysis, arguing that the trial court's alleged error was not preserved because no contemporaneous objection was lodged when the 911 recording was replayed outside Zoll's presence. As the People note, not only was there no objection, defense counsel specifically informed the trial court that he waived his client's appearance for the publication of the 911 recording during deliberations. However, we reject the People's position and apply harmless error analysis because Zoll did not have an opportunity to contemporaneously object to the

publication of the 911 recording during deliberations or to his counsel's purported waiver, as was Zoll's right. See People v. Curtis, 681 P.2d 504, 511 (Colo. 1984); People v. Wingfield, 2014 COA 173, ¶ 19, 411 P.3d 869, 873; Crim. P. 51 ("[I]f a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."). Zoll was not in the courtroom when the trial court decided, and both counsel agreed, to replay the 911 recording for the jury. Nor was he in the courtroom when his counsel's purported waiver occurred.

¶18    Unlike the plain error standard, which holds that the error must have been "so clear-cut [and] so obvious" that the trial judge should have been able "to avoid it without the benefit of objection," People v. Pollard, 2013 COA 31M, ¶ 39, 307 P.3d 1124, 1133, under harmless error analysis, we evaluate whether the trial court's error "was harmless beyond a reasonable doubt," Luu v. People, 841 P.2d 271, 275 (Colo. 1992) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). More than fifty years ago, the United States Supreme Court "recognized that most constitutional errors can be harmless." Id. at 273 (quoting Arizona v. Fulminante, 499 U.S. 279, 306 (1991)). Harmless error review analyzes the basis on which "the jury actually rested its verdict." Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) (quoting Yates v. Evatt, 500 U.S. 391, 404 (1991)). The inquiry "is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." Id. Stated differently, the question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable

11

to the error." Id. For an error to be constitutionally harmless, the reviewing court "must be confident beyond a reasonable doubt that the error did not contribute to the guilty verdict." Bernal v. People, 44 P.3d 184, 200 (Colo. 2002). If a review of the entire record demonstrates "a reasonable possibility that the error might have contributed to the conviction," the error cannot be harmless and we must reverse. Hagos v. People, 2012 CO 63, ¶ 11, 288 P.3d 116, 119 (quotation, alteration, and emphasis omitted).

## 2. Relevant Law

¶19 Both the United States Constitution and the Colorado Constitution "guarantee the right of a criminal defendant to be present at all critical stages of the prosecution." People v. White, 870 P.2d 424, 458 (Colo. 1994). "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, . . . but . . . [that] right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985).

¶20 Whether grounded in the Sixth Amendment or the Fourteenth Amendment, the right to presence "is not absolute." Luu, 841 P.2d at 273. A defendant has the right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105–06 (1934)). In other words, the defendant's presence is only required "to the extent that a fair and just hearing would be thwarted by his absence." Id. (quoting Snyder, 291 U.S. at 108). Consequently, the right to be present is not constitutionally guaranteed when the

defendant's presence would be useless or when the benefit of the defendant's presence would be "but a shadow." Id. (quoting Snyder, 291 U.S. at 106–07).

¶21 A defendant may waive the right to be present at critical stages of criminal proceedings. Wingfield, ¶ 19, 411 P.3d at 873. But defense counsel cannot waive this right on the defendant's behalf. Id. (citing Curtis, 681 P.2d at 511).

### 3. Application

¶22 Even if the trial court erred in replaying the 911 recording during deliberations in Zoll's absence, we are satisfied that any error was harmless beyond a reasonable doubt. For multiple reasons, we conclude that there is no reasonable possibility that Zoll's absence might have contributed to his convictions.

¶23 First, only a small portion of the 911 recording was played during deliberations. The record reflects that what was replayed for the jury was approximately three minutes in duration.

¶24 Second, the portion of the 911 recording published during deliberations had been played for the jury already in Zoll's presence without objection. Hence, during Zoll's absence, the jury simply heard a second time the recording it had previously heard in his presence.

¶25 Third, Zoll's counsel was present as the 911 recording was replayed. Thus, while Zoll was not in attendance, his representative was in the courtroom.

¶26 Fourth, the 911 recording was replayed under the watchful eye of the trial judge, and there is no allegation that counsel, the jury, or anyone else engaged in improper conduct as the recording was replayed. Nor is there any indication that an irregularity

took place while the 911 recording was replayed, or that the 911 recording was tainted or vulnerable to manipulation.

¶27 Finally, the part of the trial during which the 911 recording was replayed did not include any dialogue, much less a substantive discussion, between the judge and the parties. There was no need for the trial court to consult with Zoll about any issue or for Zoll to provide feedback to his counsel about any matter. Indeed, Zoll's own counsel did not believe Zoll's appearance was necessary. It was defense counsel who, unprompted, advised the trial court that he waived Zoll's appearance for the publication of the 911 recording during deliberations. In so doing, counsel admitted that Zoll's appearance was not needed because "[a]ll we're going to do is play the tape" and "Zoll's heard the tape once" already during the trial. Zoll's counsel then aptly acknowledged that "a lot of times the jury will listen" to admitted recordings during deliberations "without any of the parties present."

¶28 Zoll nevertheless contends that reversal is required because of the negative psychological impact his absence may have had on the jury. More specifically, Zoll asserts that the jury may have become biased or prejudiced against him because it may have inferred from his absence that he did not take the case seriously. We are unpersuaded by Zoll's speculation.

¶29 Significantly, although the jury found Zoll guilty of multiple charges, it acquitted him of the charge of attempting to disarm a peace officer. If, as Zoll surmises, the jury had such a negative reaction to his absence that its verdicts were influenced by bias or prejudice, it presumably would have found him guilty of all the charges. That the jury

14

found him not guilty of one charge and guilty of the remaining charges suggests that it did not disregard the trial court's instructions, including the instruction to make decisions "by applying the rules of law" provided "to the evidence presented at trial" without being influenced by "sympathy" or "prejudice." See People v. McKeel, 246 P.3d 638, 641 (Colo. 2010) ("We presume that jurors follow the instructions that they receive."); People v. Ibarra, 849 P.2d 33, 39 (Colo. 1993) (When the defendant fails to present "evidence of jury bias," we presume "that the jury understood and heeded the trial court's instructions."). Nor is there any basis to believe that all twelve jurors were so significantly impacted by Zoll's absence that they violated the oath they took at the beginning of the trial to "well and truly try the case" and to "render a true verdict according to the evidence."

¶30 On the record before us, we are confident beyond a reasonable doubt that Zoll's absence in no way contributed to the guilty verdicts. Therefore, we conclude that any error by the trial court was harmless.

¶31 We feel compelled to emphasize that the better practice would have been for the trial court to wait until Zoll was brought into the courtroom. Even when defense counsel offers to waive the defendant's appearance from what may seem like a noncritical stage of the proceeding, the most prudent and sound course of action is for the trial court to wait until the defendant is present. We sympathize with the trial courts because we are keenly aware of the burdensome dockets and severe time demands they face. But, as the old adage goes, "haste makes waste."

15

### III. Conclusion

¶32    We hold that the court of appeals erred in assessing whether the nondisclosure of certain documents from Deputy Mitchell's personnel file affected the outcome of the trial. Instead, the court of appeals should have remanded the case to the district court with directions to provide the parties the improperly withheld documents and to afford Zoll an opportunity to demonstrate that there is a reasonable probability that, had he received the documents before trial, the outcome of the proceeding would have been different. We further hold that, even if the court of appeals erred in determining that replaying the 911 recording during deliberations was not a critical stage of the proceeding that required Zoll's presence, any error in failing to secure Zoll's attendance was harmless beyond a reasonable doubt. Therefore, we reverse in part, affirm in part on different grounds, and remand to the court of appeals with instructions to return the case to the district court for further proceedings consistent with this opinion.