23CA0719 Peo v Garcia Valdivia 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0719
Arapahoe County District Court No. 22CR972
Honorable Eric White, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jose Garcia Valdivia,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Jose Garcia Valdivia appeals his conviction for felony menacing.  (At oral argument, Garcia Valdivia's counsel requested that we refer to his client as "Garcia."  We do so in this opinion.)  We reverse and remand for a new trial.

## I.     Background

### A.     The Shooting

¶ 2     Jose Mendoza called 911 early one morning to report that he had been shot in the hand.  When police officers arrived, Mendoza told them that Garcia had shot him.

¶ 3     Mendoza testified at trial that a fight broke out between him and Garcia at the apartment of their mutual friend Jannett Salazar.  Mendoza said Garcia pointed a gun at him, and when Mendoza tried to grab it, the gun fired, striking him in the pinky finger.

¶ 4     Garcia was charged in Arapahoe County — the Eighteenth Judicial District — with two counts of second degree assault, one count of felony menacing, one count of first degree assault, and two crime of violence sentence enhancers.  Garcia's theory of defense was that, not only did he not shoot Mendoza, but he was never at Salazar's apartment the day of the shooting.  At the conclusion of

1

trial, the jury acquitted Garcia of all counts except felony menacing. The trial court sentenced him to probation.

### B.    Mendoza's and Salazar's Testimony

¶ 5    Mendoza and Salazar were the only eyewitnesses who testified at trial; Garcia exercised his constitutional right not to testify.

¶ 6    Before cross-examining Salazar, defense counsel informed the court that Salazar had an "open and active" criminal case in the Eighteenth Judicial District, the same jurisdiction in which the trial was taking place. Defense counsel sought to ask Salazar about the pending charges against her. Defense counsel asserted that Salazar's testimony about her open criminal matter was "relevant to [Salazar's] credibility or bias in her testimony" because she was being prosecuted by the same district attorney's office — the Office of the District Attorney for the Eighteenth Judicial District (the District Attorney's Office) — that was calling her to the witness stand. Defense counsel explained,

> She's being called to the stand as [the prosecution's] witness. She has a reason or a motive to cooperate or give favorable testimony for this district attorney's office. Even if no explicit promises have been made, she still has an incentive to try to not upset the district

attorney's office when addressing her case with them.

¶ 7    The trial court noted it "[didn't] appear that . . . any offers . . . [had] been made to Ms. Salazar in exchange for her testimony . . . . [I]t doesn't appear that the People have explicitly made Ms. Salazar's cooperation a condition of any plea or a condition of any favorable treatment" in her case. The court asked Salazar's counsel, who was present in the courtroom, whether Salazar had engaged in discussions with the District Attorney's Office that had led her "to believe that there would be a benefit here." Her counsel told the court that Salazar "ha[d] not received any promises[] [and had] not received any benefits in exchange for her testimony."

¶ 8    The court ruled that defense counsel would not be permitted to cross-examine Salazar on her pending charges. The court explained that it may have ruled differently "if there were any actual discussions or expectations that Ms. Salazar had about her testimony in this case and whether she anticipated that there would be some sort of benefit for her in testifying here." On the witness stand, both Mendoza and Salazar linked Garcia to the shooting.

3

Mendoza testified that Garcia shot him and described the circumstances of the shooting. Salazar testified that, although she did not witness the shooting, she saw Garcia pull out a gun, she heard Mendoza tell him "to put the weapon down" and "just stop," she witnessed the two men wrestle for the gun and Mendoza try to take the gun away from Garcia, and "all of a sudden it went off." Although Mendoza contradicted himself regarding other facts, neither witness expressed any doubt that Garcia was the shooter or suggested that anyone other than Garcia fired the shot that struck Mendoza's finger.

¶ 9 During closing argument, the prosecutor asserted that both Mendoza and Salazar identified Garcia as the shooter and explained to the jury why it should believe Salazar's testimony: "Now [Salazar], she clearly did not want to be here. She told you that she had maintained a relationship with [Garcia] but did not maintain a relationship with . . . Mendoza and she still identified [Garcia] as the shooter."

¶ 10 Defense counsel attacked both witnesses' credibility by noting the internal inconsistencies in Mendoza's testimony, the differences between his and Salazar's versions of events, and Salazar's

4

"avoidant demeanor" on the witness stand. Defense counsel argued that Salazar had been "withdrawn[] [and] hunched over" while testifying and "visibly reluctant to answer" the prosecutor's questions. Further, defense counsel specifically said that Salazar reluctantly gave "answers that supported Mr. Mendoza's story" only because he intimidated her while she was on the witness stand: Mendoza "wasn't just sitting quietly, he was getting up and down, moving in the courtroom, coming in and out, making sure she knew he was there."

## II. The Trial Court's Order Barring Garcia from Inquiring into Salazar's Pending Criminal Case

¶ 11 Garcia contends the court violated his Sixth Amendment right to confront the prosecution's witness by precluding him from cross-examining Salazar about her pending charges. We agree.

### A. Standard of Review

¶ 12 "Trial courts have discretion to impose limits on cross-examination of witnesses, and we will not disturb rulings on those limits absent an abuse of that discretion." *Margerum v. People*, 2019 CO 100, ¶ 9, 454 P.3d 236, 239.

¶ 13     If an error "is a preserved one of constitutional dimension, we review for constitutional harmless error. To deem a constitutional error harmless, the error must be found harmless beyond a reasonable doubt." *Id.* at ¶ 14, 454 P.3d at 240. "An error is not harmless beyond a reasonable doubt if 'there is a reasonable possibility that the [error] might have contributed to the conviction.'" *Id.* (quoting *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119). When we review for constitutional harmless error, "the question 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Zoll v. People*, 2018 CO 70, ¶ 18, 425 P.3d 1120, 1126 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

B.     A Defendant's Right to Confront the Prosecution's Witnesses About Their Involvement with the Criminal Justice System

¶ 14     A criminal defendant is guaranteed the right to "be confronted with the witnesses against [them]." U.S. Const. amend. VI; Colo. Const. art. II, § 16. This means that criminal defendants have a constitutional right to confront the witnesses who testify against

6

them. *People v. Harmon*, 2025 COA 38M, ¶ 51, 570 P.3d 499, 509. "This right is primarily secured through cross-examination." *Margerum*, ¶ 10, 454 P.3d at 239.

¶ 15 In *Margerum*, the supreme court held that, for three reasons, a defendant "must be permitted to question a prosecution's witness about her probationary status when the witness is on probation in the same sovereign as the prosecution." *Id.* at ¶ 12, 454 P.3d at 240. "First, a prosecution witness who is on probation in the same state court system in which she is testifying is in a vulnerable position" because the "witness's ability to remain on probation is potentially in jeopardy and the threat of probation revocation — whether real or merely perceived — creates an incentive for a witness to try to curry favor with the prosecution who can seek the revocation of that witness's probation." *Id.* Second, "the desire to potentially curry favor with a prosecutor who can affect a witness's probation creates at least a perception that the witness has a motive to provide favorable testimony for the prosecution." *Id.* And third, "the witness's credibility is always relevant, meaning parties should be afforded wide latitude during cross-examination to discover any potential source of bias and, more importantly, to

provide the jury with all relevant information needed to make a credibility determination." *Id.*

¶ 16 In *Reynolds-Wynn,* a division of this court extended *Margerum*'s reasoning to situations where the prosecution's case rested on the testimony of a witness who faced a criminal charge in the same judicial district in which the defendant was being prosecuted. *People v. Reynolds-Wynn,* 2024 COA 33, ¶ 4, 551 P.3d 1211, 1214-15.

¶ 17 A restriction on a defendant's right to cross-examine a prosecution witness rises to the level of a constitutional violation if it excessively limits the defendant's ability to do so, "especially . . . concerning the witness'[s] bias, prejudice, or motive for testifying." *Id.* at ¶ 24, 551 P.3d at 1216 (quoting *Merritt v. People,* 842 P.2d 162, 167 (Colo. 1992)). A defendant establishes a Confrontation Clause violation by showing that he "'was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness,' and thereby to expose jurors to facts from which they could 'appropriately draw inferences' related to the witness's reliability." *Id.* at ¶ 24, 551 P.3d

at 1216-17 (quoting *Kinney v. People*, 187 P.3d 548, 559 (Colo. 2008)).

### C. The Trial Court Abused Its Discretion by Barring Defense Counsel from Cross-Examining Salazar About Her Pending Criminal Charges

¶ 18     We agree with Garcia that the trial court violated his Sixth Amendment right to confront his accusers by precluding him from questioning Salazar about her pending criminal charges. *See Reynolds-Wynn*, ¶ 36, 551 P.3d at 1218.

¶ 19     Salazar was in a vulnerable position because she faced criminal charges in the Eighteenth Judicial District — the same jurisdiction in which Garcia was being tried. *See Kinney*, 187 P.3d at 559 ("Although evidence of pending charges cannot be admitted to challenge a witness's general credibility, this evidence is admissible to show a witness's motive, bias, prejudice, or interest in the outcome of a trial.").

¶ 20     Contrary to the trial court's suggestion, defense counsel's right to cross-examine Salazar did not hinge on whether she had spoken with a prosecutor at the District Attorney's Office regarding benefits she might receive in her own case if she testified against Garcia. As the supreme court said in *Kinney*, "[e]ven when there has not been

an explicit promise of leniency made by the prosecution," a witness's pending charges are sufficient to satisfy the "nexus between the pending case and the witness's testimony." 187 P.3d at 561. In addition, Salazar's personal interest in currying favor with the prosecution created "at least a perception that [she had] a motive to provide favorable testimony for the prosecution." *Margerum,* ¶ 12, 454 P.3d at 240 (explaining that a witness's testimony may be colored by her mere perception that her testimony against the defendant will impact the prosecution's leniency towards her in her own case). And because Salazar's credibility was relevant, defense counsel was entitled to "discover any potential source of bias and, more importantly, to provide the jury with all relevant information needed to make a credibility determination." *Id.* Accordingly, the mere existence of an active case against Salazar in the District Attorney's Office was sufficient to trigger defense counsel's right to question her about the pending charges against her.

¶ 21    For the same reasons, the People's attempt to distinguish *Reynolds-Wynn* fails. It is of no moment that "nothing in this record suggests that the pending charge [against Salazar] created

10

any vulnerability" because, unlike in *Reynolds-Wynn*, the prosecutor here had not taken steps to prevent the witness's arrest on an outstanding warrant when the witness testified. *See Reynolds-Wynn*, ¶ 15, 551 P.3d at 1215. The rule articulated in cases such as *Kinney*, *Margerum*, and *Reynolds-Wynn* is sweeping — as relevant here, the trial court must allow a criminal defendant to cross-examine any witness who is testifying in the same judicial district in which the witness faces criminal charges, regardless of whether the witness received a promise of leniency if the witness testified against the defendant. *See Kinney*, 187 P.3d at 560; *Margerum*, ¶ 12, 454 P.3d 240; *Reynolds-Wynn*, ¶¶ 37-38, 551 P.3d at 1218-19.

¶ 22 In sum, the trial court abused its discretion and violated Garcia's Confrontation Clause rights by denying his request to cross-examine Salazar regarding her pending charges.

### D. The Error Was Not Harmless

¶ 23 When assessing whether a Confrontation Clause error was harmless beyond a reasonable doubt, we consider (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or

absence of evidence corroborating or contradicting the witness's testimony on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *People v. Jones*, 2023 COA 104, ¶ 44, 543 P.3d 419, 427.

¶ 24　　Under the five considerations articulated in *Jones*, we cannot say that the guilty verdict rendered in Garcia's trial was "surely unattributable" to the trial court's error in improperly curtailing the defense's cross-examination of Salazar. *Zoll*, ¶ 18, 425 P.3d at 1126 (quoting *Sullivan*, 508 U.S. at 279); *see also Merritt*, 842 P.2d at 167 (noting that the constitutional harmless error doctrine "is to be sparingly applied" (quoting *People v. Myrick*, 638 P.2d 34, 38 (Colo. 1981))).　Because the jury acquitted Garcia of assault, in reviewing for constitutional harmless error, we focus on the role Salazar's testimony played in Garcia's conviction for felony menacing.　To convict Garcia of that offense, the prosecution needed to prove beyond a reasonable doubt that, while using a firearm, Garcia "knowingly place[d] or attempt[ed] to place [Mendoza] in fear of imminent serious bodily injury."　§ 18-3-206, C.R.S. 2025.

¶ 25    First, both sides recognized Salazar's importance to the case. During closing argument, the prosecutor presented reasons why the jury should believe her. The prosecutor described Salazar as a disinterested and, therefore, credible witness, and noted that she had testified for the prosecution despite her relationship with Garcia. The prosecutor also argued that Salazar was credible by reminding the jury that her testimony "line[d] up with" Mendoza's. Defense counsel also focused on Salazar. During closing argument, defense counsel took pains to attack Salazar's credibility. Defense counsel responded to the prosecution's credibility argument by asserting that the testimonies of Salazar and Mendoza "d[id]n't match" and that Salazar was "obviously not telling the truth" because Mendoza had intimidated her while she was on the witness stand.

¶ 26    Salazar's credibility was indeed critical to the case. As noted above, the defense theory was that Garcia had never been to Salazar's apartment. Given the lack of physical evidence linking Garcia to the apartment, Salazar's testimony placing Garcia in the apartment at the time of the shooting directly undercut the defense's theory. Accordingly, there is a reasonable possibility that

13

the jury relied on Salazar's testimony to convict Garcia of felony menacing.

¶ 27 Second, not only was Salazar an important witness, but without her testimony, the prosecution's case could have collapsed — even though her testimony corroborated Mendoza's testimony. Because of the extent to which the two witnesses' accounts coincided, the jury was more likely to deem Mendoza credible if it also believed Salazar. Conversely, without Salazar's supporting testimony, the jury could have found that Mendoza was not credible. The record supports defense counsel's argument in closing that Mendoza contradicted himself on the witness stand.

¶ 28 More significantly, the jury must have disbelieved significant portions of Mendoza's testimony because it acquitted Garcia of the three assault counts. If Mendoza's testimony had been completely credible, it would have supported convictions on all counts.

¶ 29 Thus, had the trial court permitted defense counsel to disclose to the jury Salazar's incentive to curry favor with the prosecution, the jury could have questioned Salazar's veracity and concluded it could not convict Garcia based on Mendoza's testimony alone. (Because Salazar's testimony did not address Mendoza's credibility,

we disagree with Garcia's assertion that Salazar "bolstered" Mendoza's testimony. *See People v. Battigalli-Ansell*, 2021 COA 52M, ¶ 53, 492 P.3d 376, 387 (holding that a witness engaged in bolstering when he suggested that the defendant had been telling the truth on a material issue). In any event, Salazar's testimony provided important support for Mendoza's testimony regardless of whether her testimony was cumulative of or bolstered Mendoza's testimony.)

¶ 30    Third, because Mendoza's credibility was reasonably subject to attack, the fact that Salazar's testimony was cumulative of Mendoza's does not weigh in favor of determining that the court's error was harmless beyond a reasonable doubt. The only evidence placing Garcia in Salazar's apartment at the time of the shooting was Mendoza's and Salazar's testimonies. And Salazar's testimony was the only evidence that corroborated Mendoza's account. Absent that corroboration, the jury may have discredited Mendoza's testimony.

¶ 31    Fourth, although the trial court allowed the defense to cross-examine Salazar on issues unrelated to her pending charges, the jury never learned of her significant incentive to cooperate with

the prosecution. This line of questioning could have caused greater damage to Salazar's credibility in the eyes of the jury than any of the questions the trial court allowed the defense to ask on cross-examination. *See Merritt*, 842 P.2d at 170 (noting that, unlike those subjects on which the defense was permitted to cross-examine the witnesses, the prohibited cross-examination into their receipt of use immunity directly concerned their "bias or motive to lie or dissemble" about "the facts in this case").

¶ 32 Fifth, the evidence supporting Garcia's felony menacing conviction was not overwhelming. As noted above, the testimony of both Salazar and Mendoza was the only evidence placing Garcia in the apartment at the time of the shooting.

¶ 33 Further, we disagree with the People's assertion that the split verdict "shows that rather than being prejudiced against him, the jury carefully considered the evidence supporting each charge." Salazar testified that, although she did not actually witness the shooting, she saw the fight that led up to it. The split verdict could also have meant that the prosecution's case was weak and only Salazar's testimony convinced the jury to convict on felony menacing. *See United States v. Kallin*, 50 F.3d 689, 695 (9th Cir.

16

1995) (explaining that a split verdict on its own is ambiguous because "it could just as well indicate that the jury was predisposed to acquit on all counts but was influenced to partially convict by" considering inadmissible evidence).

¶ 34    For these reasons, we conclude that the court's error in barring the defense from cross-examining Salazar on her pending charges was not harmless beyond a reasonable doubt.

### III.    The Trial Court's Dismissal of Jurors Based Solely on Their Jury Questionnaire Responses

¶ 35    Garcia contends that the trial court violated his constitutional rights to due process, equal protection, and an impartial jury by striking two jurors without allowing defense counsel to voir dire and attempt to rehabilitate them.  We need not reach this issue, however, in light of our reversal of Garcia's conviction based on the violation of his Confrontation Clause rights and because the juror issue is unlikely to arise on remand.

### IV.    Disposition

¶ 36    The judgment of conviction is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

17

JUDGE WELLING and JUDGE TOW concur.