**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Dalvin James Green ICKLER, Respondent.**

**No. 93SC305.**

Supreme Court of Colorado,
En Banc.

July 11, 1994.

Rehearing Denied Aug. 15, 1994.

---

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Linda C. Michow, Matthew S. Holman, Asst. Attys. Gen., Denver, for petitioner.

Harry J. Holmes, Longmont, Stuart S. Keown, Broomfield, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Ickler v. People,* No. 92CA0536 (Colo. App. Mar. 4, 1993) (not selected for official publication), the court of appeals reversed the trial court's order revoking the probation of respondent, Dalvin James Green Ickler. The trial court determined that Ickler violated the terms of an order granting him probation by failing to participate in a sex offender treatment program. The court of appeals concluded that Ickler had not been accepted by the program to which he had been referred and thus could not have violated a condition of his probation requiring participation in a program. Having granted certiorari to review the propriety of the court of appeals' decision, we reverse and remand the case with directions to reinstate the trial court's order of revocation.

I

On July 5, 1990, Ickler invited the victim, a fourteen-year-old student, and her girlfriend to join him for dinner at a Fort Lupton, Colorado, restaurant. The two girls agreed. Later that evening Ickler drove the victim to an isolated field and sexually assaulted her in the cab of his truck. Although Ickler threat-

ened the victim with further harm if she informed anyone about the incident, she described the assault to her girlfriend that night. On August 1, 1990, the victim reported the assault to the Fort Lupton Police Department.

On September 20, 1990, Ickler was charged with one count of second degree sexual assault, pursuant to section 18-3-403, 8B C.R.S. (1986 & 1993 Supp.). On May 14, 1991, pursuant to a plea agreement, he entered a plea of guilty to the charge. The plea agreement provided, *inter alia*, that he would be sentenced to imprisonment for thirty days in the Weld County Jail, with work release, and four years of probation.

A sentencing hearing was set for June 24, 1991. A presentence investigation report introduced in evidence at the hearing noted that Ickler had denied any involvement in the sexual assault, had stated that the victim's story was a fabrication made because he had reneged on a promise to take the victim's girlfriend to a dance, and had stated that his truck was in a repair shop at the time of the alleged offense. Referring to the report's references to Ickler's denial of guilt, the trial court asked Ickler if he wished to comment in view of the previously entered guilty plea. Ickler declined to comment. The prosecutor stated that she understood sex offender counseling programs were available for persons who deny responsibility for such crimes.

The trial court imposed the sentence recommended in the plea agreement. Among the conditions of probation were requirements that Ickler undergo mental health evaluation and treatment and sex offender treatment as designated by his probation officer. Ickler's probation officer referred Ickler to the "Lifeskills" program for evaluation and treatment.[1] Lifeskills had previously treated sex offenders who were in denial.

Ickler was interviewed by Lifeskills personnel on August 27, 1991, for evaluation. He then canceled meetings scheduled for September 23, September 26, and October 4, 1991. The evaluation was finally completed on October 8, 1991, when he appeared for a second interview. During the interviews, two tests, the Minnesota Multiphasic Personality Inventory and the Multiphasic Sexual Inventory, were administered to Ickler. Concluding that Ickler's responses in the interviews and on the tests were not straightforward and that he was not motivated for treatment, Lifeskills rejected him. At the probation revocation hearing, Dr. Frank Andrews, a psychologist employed by Lifeskills, explained that determination as follows:

> We don't have sex offenders who come into the group and raise their hand and say, these are the things I did, and give us a complete disclosure. What we do have are people that are able to make part disclosures, enough so that we can find a basis to start working with the person in the group. And if we find that, if we could find some motivation during the interview or group, we can work with that person over a period of a year or year and a half.
>
> For a person who makes complete denial, especially countering statements, and where there is not much question in our minds at all in going through the materials that this person is giving us a song and dance, we don't have much impact on that kind of person, and they quite often drop out of the group, or move out of the area, or we lose control of that person.

Andrews indicated his belief that the only appropriate treatment setting for Ickler in Colorado was a program administered by the Department of Corrections for inmates.

Lifeskills reported its decision to Ickler's probation officer, who executed a complaint for revocation of probation on October 22, 1991. The complaint alleged that Ickler had violated conditions of probation requiring him to report for a mental health evaluation, to participate in whatever counseling/therapy program is recommended, and to participate in a sex offender treatment program. It further alleged that Ickler had been rejected by Lifeskills "due to [Ickler's] lack of cooperation, specifically his total refusal to accept any responsibility for this offense...." When the officer spoke to Ickler that day, Ickler told her that he would contact Lifes-

---

1. The record is unclear with respect to the organizational mission or structure of Lifeskills.

kills again.[2] On October 23, 1991, Ickler informed his probation officer that Ickler could not meet with Lifeskills until mid-November. She then filed the complaint.[3]

On January 24, 1992, a probation revocation hearing was held. At the conclusion of the hearing, the trial court determined that Ickler had violated the condition of his probation requiring him to obtain treatment, despite the efforts by his probation officer and by Lifeskills to provide treatment for him. The trial court revoked Ickler's probation and sentenced him to imprisonment for four years.

On February 20, 1992, Ickler filed a motion with the trial court, pursuant to Crim.P. 35(c)(2)(VII), to set aside the revocation of his probation and to vacate his sentence. In his motion he alleged, *inter alia*, that because the conditions of his probation did not include a requirement that he admit his commission of the sexual assault his denial of such conduct and his lack of cooperation with Lifeskills personnel could not be deemed violations of the conditions of his probation. The trial court denied the motion. On appeal, the court of appeals held that the trial court abused its discretion in revoking Ickler's probation.

## II

The People argue that the court of appeals erred in concluding that the trial court abused its discretion in revoking Ickler's probation. We agree.

■ Probation is a privilege, not a right. *Holdren v. People,* 168 Colo. 474, 478, 452 P.2d 28, 30 (1969). If a probationer violates any condition of an order of probation, the order may be revoked. *Id. See also* §§ 16–11–205 and –206, 8A C.R.S. (1986 & 1993 Supp.). The issues for determination in a probation revocation proceeding are whether the defendant has violated a valid condition of his or her probation and, if so, what action is appropriate in light of the violation. *See*

*Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 484–89, 92 S.Ct. 2593, 2601–04, 33 L.Ed.2d 484 (1972). *See also People v. Varner,* 181 Colo. 146, 149–50, 508 P.2d 390, 391–92 (1973). In a revocation proceeding, the People must establish a violation of a condition of probation by a preponderance of the evidence. § 16–11–206(3), 8A C.R.S. (1986). *See People v. Adair,* 44 Colo.App. 423, 424–25, 620 P.2d 46, 47 (1980), *aff'd in part, rev'd in part,* 651 P.2d 389 (Colo.1982) (revocation of deferred sentence pursuant to § 16–7–403(2), 8 C.R.S. (1978)). Whether probation has been violated is a question of fact; whether probation should be revoked, once a violation is found, is within the discretion of the trial court. *Holdren v. People,* 168 Colo. at 478, 452 P.2d at 30; *People v. Adair,* 44 Colo.App. at 425, 620 P.2d at 47.

■ The terms and conditions of Ickler's probation order required him to participate and cooperate in any program involving professional assistance or counseling and in any sex offender treatment program ordered by his probation officer. Ickler was referred to Lifeskills by his probation officer. Test results, two interviews, and Ickler's behavior in canceling appointments convinced Lifeskills personnel that he was not motivated for treatment, that he was not giving straightforward answers to questions, that he was not prepared to accept responsibility for his crime, and that he was not amenable to outpatient treatment. This evidence supports the allegations of the probation officer that Ickler did not cooperate with Lifeskills personnel.

■ The court of appeals determined that because Ickler was not accepted by Lifeskills he never had an opportunity to participate in its program. We conclude that Ickler's participation in Lifeskills' evaluation process constituted participation in a mental health evaluation and sex offender treatment pro-

---

**2.** At the probation revocation hearing Ickler's probation officer testified that Ickler told her that he would tell Lifeskills personnel that he had committed the sexual assault on the victim. In the course of his testimony at this hearing, Ickler denied making such a statement.

**3.** Ickler did schedule an appointment with Lifeskills for December 3, 1991, but canceled the appointment.

gram for purposes of the conditions of the probation order. Ickler's failure to cooperate in the evaluation phase of the program thus violated the conditions of his probation, as the trial court found. A contrary result would encourage sex offenders to avoid cooperation in any evaluation procedure in the hope of achieving a denial of admission and thus never having to "participate" in such a program.

## III

Ickler asserts that he was not required to admit commission of the sexual assault as a condition of probation. This assertion may be true in the technical sense that the conditions set forth in the order of probation did not expressly contain this requirement. However, Ickler admitted his commission of the offense by entering a plea of guilty to the charged offense and he has not sought to withdraw that plea. Furthermore, we reject Ickler's argument that his probation was revoked because he denied participation in the offense. While such denial may have been the primary basis for Lifeskills' determination that it could not treat Ickler, it was not the only factor. Dr. Andrews' testimony permits the inference that even an admission of guilt by Ickler might not have been sufficient to ensure Ickler's admission into the Lifeskills program in view of Ickler's test results, his erratic conduct, and his lack of candor. Even when his probation officer offered Ickler a further opportunity to demonstrate to Lifeskills that he would cooperate with that program, Ickler failed to keep his appointment with Lifeskills. This evidence supports the conclusion that Ickler's lack of cooperation was not limited to his refusal to admit commission of the sexual assault. In view of the entire record, we conclude that the trial court did not abuse its discretion in revoking Ickler's probation.

Ickler contends that he was not given fair notice that he would have to admit his guilt of the offense in order to gain admission into a sex offender treatment program and that at the sentencing hearing the trial court erred in not explicitly informing Ickler that persistence in denial of guilt could result in the revocation of his probation. We reject these arguments.

Ickler does not deny that the conditions of his probation included the requirement that he participate in a mental health program and a sex offender treatment program designated by his probation officer. In addition, one portion of the sentencing hearing was devoted to a discussion of the availability of a sex offender treatment program for persons who denied responsibility for their unlawful conduct. The record demonstrates that Ickler was given ample notice that failure to cooperate with the program to which he was referred by his probation officer could result in the revocation of his probation.

## IV

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in ordering revocation of Ickler's probation. We therefore reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the trial court's judgment.