24CA0940 Peo v Milsap 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0940
City and County of Denver District Court No. 11CR2695
Honorable Kandace C. Gerdes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James E. Milsap,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1     The Colorado Supreme Court painted with a broad brush in *Allman v. People* by announcing that "when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others." 2019 CO 78, ¶ 40, 451 P.3d 826, 835. On a single day in June 2021, however, a divided supreme court announced five opinions that carved out exceptions to *Allman*'s sweeping language when a court imposes a prison sentence and a consecutive sentence on Sex Offender Intensive Supervision Probation (SOISP) under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), §§ 18-1.3-1001 to -1012, C.R.S. 2025. *See People v. Rainey*, 2021 CO 53, ¶ 16, 488 P.3d 1081, 1085; *People v. Coleman*, 2021 CO 52, ¶ 18, 488 P.3d 1086, 1090; *People v. Lowe*, 2021 CO 51, ¶ 17, 488 P.3d 1122, 1126; *People v. Keen*, 2021 CO 50, ¶ 40, 488 P.3d 1127, 1138; *People v. Manaois*, 2021 CO 49, ¶ 69, 488 P.3d 1099, 1116-17.

¶ 2     In two of the 2021 quintet of cases, the defendant was convicted of a crime subject to a mandatory prison sentence and a separate offense subject to SOISP. *See Coleman*, ¶¶ 4, 7, 20, 488 P.3d at 1088-91; *Keen*, ¶¶ 5, 8, 21, 36-39, 488 P.3d at 1131-33,

1

1137-38. In the other three cases, the defendant was not convicted of any crime for which prison time was mandated. *See Rainey*, ¶ 5, 16 n.3, 488 P.3d at 1084, 1085 n.3; *Lowe*, ¶ 5, 488 P.3d at 1124; *Manaois*, ¶ 8, 488 P.3d at 1104.

¶ 3 Today, we consider James E. Milsap's argument that the general rule of *Allman* — and not the exceptions to *Allman* discussed in the five 2021 cases — applies when, like here, a defendant pleads guilty to a crime that is not subject to a mandatory prison sentence and to a crime that is subject to SOISP. We conclude that, under these facts, consistent with the reasoning of the 2021 cases, *Allman* does not bar imposing consecutive sentences to the custody of the Department of Corrections (DOC) and to SOISP.

¶ 4 Because we reject Milsap's other contentions of error, we affirm the district court's order revoking his sentence to SOISP.

## I. Background

¶ 5 While on probation for a previous felony, Milsap threatened his girlfriend with a machete before sexually assaulting her. He was charged with menacing and sexual assault.

¶ 6   Milsap pleaded guilty to added counts of second degree assault (a class 4 felony) and attempted sexual assault (a class 5 felony) in exchange for dismissal of the original counts. In his plea agreement, Milsap stipulated to a sentence within a range of five to ten years in the custody of the DOC for second degree assault and a consecutive eight years on SOISP for attempted sexual assault. The district court imposed a ten-year prison sentence, followed by a three-year parole period, and a consecutive eight-year SOISP sentence. As Milsap's release from prison approached, the probation department sought clarification from the court as to whether Milsap needed to serve the SOISP sentence consecutively to or concurrently with the three-year parole term. In April 2019, the court issued an order (the April order) saying that "[b]y agreement of counsel and by this [o]rder of the [c]ourt, probation will run concurrent to parole." Milsap was later released to parole and began serving his SOISP sentence. In November 2020, he signed a document confirming his understanding of the conditions of SOISP, including that "PROBATION WILL RUN CONCURRENT TO PAROLE."

¶ 7    In June 2021, Milsap's probation officer filed a complaint to revoke Milsap's SOISP, alleging that he had violated its conditions by testing positive for cocaine, being unsuccessfully discharged from sex offender treatment, failing to attend probation appointments, and leaving Colorado without permission. In addition, the probation department received reports that Milsap had never returned to Colorado. The court issued a warrant for Milsap's arrest in June 2021, but he was not arrested until March 2023. Also in March 2023, the parole board discharged Milsap's parole. At the conclusion of a two-day hearing (the revocation hearing) on the revocation complaint, Milsap argued that the prosecution had presented insufficient evidence to establish that he had violated the SOISP conditions. He additionally asserted that his sentence to prison followed by SOISP was illegal and that the court had violated his constitutional right to due process by modifying his sentence to run SOISP concurrently with his parole term in his absence and without his knowledge. According to Milsap, he was not present when the court entered the April order, and, at the time, he believed that his probation would not begin until after he completed his parole.

¶ 8    The court determined that Milsap's sentence to prison followed by SOISP was not illegal.  The court further said that, although the April order changed Milsap's sentence from consecutive to concurrent, his due process rights were not violated because his counsel had agreed to the modification, and Milsap did not object when he learned of the change upon entering SOISP in November 2020.  Finally, the court found that the prosecution had introduced sufficient evidence to establish that Milsap had violated the conditions of his SOISP sentence.  At the resentencing hearing, the court noted that Milsap had discharged his prison sentence.  It then revoked his SOISP sentence and resentenced him to four years in the custody of the DOC on the attempted sexual assault conviction.

## II.    Analysis

¶ 9    Milsap contends that the district court erred by revoking his SOISP sentence because (1) his original sentence to prison followed by SOISP was illegal; (2) the court's order modifying his SOISP sentence to run concurrently with the parole component of his prison sentence without his knowledge and outside his presence violated his due process rights; and (3) he substantially complied

with the conditions of SOISP. We address — and reject — each of Milsap's assertions in turn.

### A. Milsap's Original Sentence Was Legal

¶ 10 In *Allman*, the supreme court concluded that, when a court sentences a defendant for multiple offenses in the same case, the court may not impose imprisonment for certain offenses and probation for others. *Allman*, ¶¶ 3, 28, 33-40, 451 P.3d at 828, 833-35. The court explained that "[a] court's power to sentence, both to prison and probation, derives entirely from statute" and that "the probation statute does not grant the courts the power to impose sentences to both imprisonment and probation in a multi-count case." *Id.* at ¶ 28, 451 P.3d at 833.

¶ 11 In *Manaois*, the supreme court limited *Allman* to cases in which the court sentences the defendant to prison and probation under the general sentencing statutes following the defendant's convictions for multiple non-sex offenses. *Manaois*, ¶¶ 2-3, 488 P.3d at 1103. The supreme court explained in *Manaois* that "*Allman*'s sentencing prohibition . . . does not apply in cases where a defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense" in accordance with

6

SOLSA, which the court described as an "intricate and stand-alone sentencing scheme." *Id.* at ¶¶ 2-5, 22, 69, 488 P.3d at 1103, 1106, 1115-16.

¶ 12    In *Keen,* the supreme court extended *Manaois*'s exception to *Allman* to those cases "where the defendant receives a prison sentence for a non-sex offense and a consecutive probation sentence for an offense that does *not* qualify as a 'sex offense' but that *nevertheless falls within SOLSA's scope and requires participation in SOISP."* *Keen,* ¶¶ 1-2, 19, 31, 40, 488 P.3d at 1130, 1133, 1136, 1138.  An offense that does not meet SOLSA's definition of a "sex offense" but nonetheless falls within SOLSA's scope is referred to as a "sex-related offense[]."  *Id.* at ¶ 1 n.1, 488 P.3d at 1130 n.1; *Manaois,* ¶ 46, 488 P.3d at 1110-11.

¶ 13    Milsap asserts that in *Keen, Coleman,* and *Rainey*, the supreme court determined that the exceptions to *Allman*'s general rule apply only when the defendant's non-sex offense conviction subjects the defendant to a mandatory prison sentence.  He argues that in each of these cases the defendant was convicted of a per se crime of violence or an offense that met the definition of a crime of violence because it involved serious bodily injury or the use of a

7

deadly weapon.  *See* § 18-1.3-406(2)(a)(I), C.R.S. 2025; *People v. Banks*, 9 P.3d 1125, 1130 (Colo. 2000) (explaining that an offense is a per se crime of violence if the statute defining the offense specifically requires crime of violence sentencing under section 18-1.3-406).  Milsap argues that *Allman* controls when the conviction for the non-sex offense — such as his second degree assault conviction — does not require a prison sentence.

¶ 14    The breadth of the holdings in *Manaois, Keen, Coleman,* and *Rainey* could not be clearer.  In *Manaois*, the supreme court clarified that *Allman* did not prohibit the imposition of consecutive prison-SOISP sentences when a defendant is convicted of a non-sex offense and a sex offense arising from the same incident.  *Manaois*, ¶ 5, 488 P.3d at 1103.  In *Keen,* the supreme court reiterated that "*Manaois* teaches that the rule of *Allman* doesn't apply in multi-count cases where a defendant receives: (1) a prison sentence for a non-sex offense; and (2) a consecutive probation sentence for a 'sex offense' pursuant to [SOLSA], requiring participation in [SOISP]."  *Keen*, ¶ 1, 488 P.3d at 1130.  *Keen* stands for the proposition that "*Allman* does not prohibit courts from sentencing a defendant in a multi-count case to prison for a non-sex offense

8

followed by SOISP for another offense — regardless of whether the latter is a *sex offense* requiring an indeterminate sentence or a *sex-related offense* requiring a determinate sentence." *Id.* at ¶ 2, 488 P.3d at 1130; *see Rainey,* ¶ 15, 488 P.3d at 1085; *Coleman,* ¶ 2, 488 P.3d at 1087; *see also Snedeker v. People,* 2025 CO 10, ¶ 3, 564 P.3d 301, 304 ("[W]hen a sentence is illegal under *Allman* and a defendant has already served the prison portion of the sentence, the court has the authority to reimpose a probationary term because probation remains a legal sentencing option at resentencing. . . . [I]t does not violate *Allman* for a court to sentence a defendant to imprisonment in *one* case and probation in a *separate* case.").

¶ 15　　In *Keen* and *Coleman,* the defendants pleaded guilty to non-sex offenses that were per se crimes of violence. *Keen,* ¶¶ 8, 36, 488 P.3d at 1131-32, 1137; *Coleman,* ¶ 7, 488 P.3d at 1089. In upholding the legality of the sentences imposed in those cases — prison followed by SOISP — the supreme court said that its decisions were "buoyed by the crime of violence statute, which is implicated by" the defendants' convictions for "non-sex offense[s]" and requires prison sentences. *Coleman,* ¶¶ 4, 20, 488 P.3d at

9

1088, 1090-91; *Keen*, ¶¶ 5, 21, 36-39, 488 P.3d at 1131, 1133, 1137-38. But the court expressly recognized that the defendants' convictions for crimes of violence were not the basis for its decisions. The court explained that because the defendants were sentenced for crimes of violence, the crime of violence statute provided "additional support" or "an independent basis" for concluding that *Allman*'s prison-probation restriction did not apply. *Coleman*, ¶¶ 4, 20, 488 P.3d at 1088, 1090-91 ("[W]e view the crime of violence statute as permitting prison-probation sentences where a defendant . . . is sentenced for a crime of violence and a non-violent crime in the same case."); *see Keen*, ¶ 39, 488 P.3d at 1138. Milsap maintains, incorrectly, that the defendant in *Rainey* was convicted of a non-sex offense that subjected him to mandatory imprisonment under the crime of violence statute. In *Rainey*, ¶ 5, 488 P.3d at 1084, the defendant pleaded guilty to child abuse, which is not a per se crime of violence. *See* § 18-6-401, C.R.S. 2025. And simply because an offense meets the statutory definition of a crime of violence does not mean that a defendant convicted of that offense is necessarily subject to crime of violence sentencing. *See* § 18-1.3-406(3), (5); *Banks*, 9 P.3d at 1130 ("[C]rime of violence

10

sentencing . . . applies when . . . the prosecution pleads and proves use, or possession and threatened use, of a deadly weapon, or serious bodily injury . . . .").

¶ 16 The *Rainey* court expressly acknowledged that, because the defendant did not plead guilty to a crime of violence, the crime of violence statute was "immaterial to [its] analysis." *Rainey*, ¶ 16 n.3, 488 P.3d at 1085 n.3. Thus, in *Rainey*, the supreme court did not rely on *Keen*'s crime of violence analysis to uphold the challenged sentence. *Id.*

¶ 17 Milsap further fails to acknowledge that, in *Manaois*, the supreme court upheld the imposition of consecutive prison-SOISP sentences even though the defendant was convicted of a non-sex offense that was not a crime of violence. *See Manaois*, ¶¶ 3-6, 8, 488 P.3d at 1103-04. In upholding the sentences, the *Manaois* court recognized that, when a defendant is convicted of a sex offense and a non-sex offense arising out of the same incident, SOLSA places only one restriction on the sentences that may be imposed: "[I]f the court sentences a defendant to prison for the sex offense, it must order that sentence and the sentence for the other offense (whether to prison *or probation*) to be 'served consecutively

11

rather than concurrently.'" *Id.* at ¶ 57, 488 P.3d at 1113 (emphasis added) (quoting § 18-1.3-1004(5)(a), C.R.S. 2025).

¶ 18     Because the crime of violence statute only provided a nonessential, independent basis to support the supreme court's holdings in *Keen* and *Coleman*, and because the court did not rely on the statute to reach the same conclusion in *Manaois* and *Rainey*, we reject Milsap's assertion that the exceptions to *Allman* only apply when a non-sex offense conviction subjects the defendant to mandatory imprisonment under the crime of violence statute.

¶ 19     We note that, in his reply brief, Milsap purports to clarify the *Allman* argument in his opening brief, asserting that he did not solely rest the mandatory imprisonment argument in his opening brief on offenses for which imprisonment is required *under the crime of violence statute.*  He claims that he asserted in his opening brief that *Keen, Coleman,* and *Rainey* do not apply when a non-sex offense conviction subjects a defendant to mandatory imprisonment *on any legal basis.*  But we do not discern this broader argument in Milsap's opening brief.  *See People v. Grant,* 174 P.3d 798, 803 (Colo. App. 2007) (explaining that we decline to consider an argument asserted for the first time in a reply brief).  Further,

Milsap presents no argument or authority to support his contention that the 2021 exceptions to *Allman* do not apply when a defendant is sentenced to mandatory imprisonment under a legal basis other than the crime of violence statute. *See People v. Houser*, 2020 COA 128, ¶ 24, 490 P.3d 863, 869-70 (noting that we will not consider a bald legal proposition presented without argument or development).

¶ 20    In any event, we are not convinced that Milsap's attempt to narrow *Allman*'s exceptions to those cases in which the non-sex offense mandates a prison sentence can be squared with the supreme court's holdings in the 2021 quintet. Rather, as explained above, in those decisions, the supreme court held that, when a defendant receives a prison sentence for a non-sex offense followed by an SOISP sentence for a sex offense or a sex-related offense, "[s]o long as the probation sentence in that scenario falls within the confines of SOLSA (as does every SOISP sentence), *Allman*'s sentencing restriction is inapplicable." *Rainey*, ¶ 2, 488 P.3d at 1083; *Coleman*, ¶ 2, 488 P.3d at 1088; *Keen*, ¶ 2, 488 P.3d at 1130.

¶ 21    In light of our conclusion that the 2021 quintet governs this case, we must next determine whether, as the People argue, Milsap's conviction for class 5 felony attempted sexual assault is a

"sex offense" governed by SOLSA and subject to *Manaois* or whether it is a "sex-related offense" subject to *Keen*. Under the applicable statutes, class 5 felony attempted sexual assault is a not a sex offense for purposes of SOLSA. *See* § 18-1.3-1003(5)(a)(I)(A), (b), C.R.S. 2025 (an attempt to commit a sex offense is a sex offense for purposes of SOLSA if such criminal attempt would constitute a class 2, 3, or 4 felony). Rather, it is a sex-related offense subject to SOISP. *See* § 18-1.3-1007(1)(a), C.R.S. 2025 ("[T]he court shall require a person, as a condition of probation, to participate in the intensive supervision probation program established pursuant to this section if the person is convicted of . . . [c]riminal attempt . . . to commit any of the offenses specified in section 18-1.3-1003(5)(a), which attempt . . . would constitute a class 5 felony."); *see also Manaois*, ¶¶ 40, 46, 488 P.3d at 1109-11 (holding that a defendant convicted of a sex-related offense is subject to SOISP under section 18-1.3-1007(1)(a)); *Keen*, ¶ 25, 488 P.3d at 1134-35 (same). Therefore, Milsap's sentences fall squarely within the scope of *Keen*. For these reasons, we hold that the court was authorized to sentence Milsap to prison on his second degree

assault conviction followed by SOISP on his attempted sexual assault conviction.  *See Keen,* ¶¶ 1-2, 40, 488 P.3d at 1130, 1138.

B. Even if the District Court Modified Milsap's Sentence, the Modification Does Not Require Reversal

¶ 22 Milsap next argues that the court improperly modified his sentence when it entered the April order, in which the court said that his SOISP sentence would run concurrently with the parole component of his prison sentence, and that the court violated his due process rights by entering the April order outside his presence and without his knowledge.  We assume for purposes of our analysis that Milsap preserved this argument even though he did not object to the April order when he purportedly first became aware of it upon entering SOISP in November 2020.  *See People v. Miller,* 113 P.3d 743, 749 (Colo. 2005) ("[C]onstitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection.").  But even if he did not preserve the argument, Milsap's failure to object would not preclude us from considering whether the court violated his constitutional rights by modifying his sentence if he lacked the opportunity to object when he learned of

15

the April order. *See* Crim. P. 51 ("[I]f a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."); *Zoll v. People*, 2018 CO 70, ¶ 17, 425 P.3d 1120, 1125 (applying constitutional harmless error when the defendant did not have an opportunity to contemporaneously object).

¶ 23    Nonetheless, assuming, without deciding, that the April order constituted a sentence modification and that the court violated Milsap's constitutional due process rights by entering the order, *see Zoll*, ¶ 19, 425 P.3d at 1126; *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003), we conclude that any such error does not require reversal.

¶ 24    "[W]e review trial errors of constitutional dimension that were preserved by objection for constitutional harmless error." *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119; *see also Zoll*, ¶ 15, 425 P.3d at 1125 (holding that a violation of a defendant's due process rights presents a constitutional issue). Such an error requires reversal unless the reviewing court can say the error was harmless beyond a reasonable doubt. *Hagos*, ¶ 11, 288 P.3d at 119. The State bears the burden of proving that an error was

harmless beyond a reasonable doubt. *Id.* (Although the People do not argue harmlessness in this appeal — they solely argue that the court did not modify Milsap's sentence — the prosecutor argued harmlessness at the revocation hearing by noting that "the change from consecutive to concurrent . . . worked to . . . Milsap's advantage by not extending his sentence beyond the conclusion of his period of parole." We can affirm on any ground supported by the record even if the court did not rely on or contemplate that ground. *People v. Ray*, 2025 CO 42M, ¶ 29, 575 P.3d 400, 419.)

¶ 25    First, we are convinced that, as the prosecutor explained, the modification of Milsap's sentence to run SOISP concurrently with his parole term inured to his benefit. When given the opportunity to explain how the proceeding would have been different if Milsap had knowledge of, or been present for, the sentence modification, defense counsel declined to comment on whether Milsap "would have objected [to the sentence modification] and had a sentence run even longer by virtue of a consecutive probation sentence." *See People v. Hernandez*, 2019 COA 111, ¶ 24, 487 P.3d 1095, 1101 ("[I]f particular facts show that the defendant's presence would be

17

useless or only slightly beneficial, proceeding in the defendant's absence will be harmless beyond a reasonable doubt.").

¶ 26 Second, even if Milsap was not directly notified of the April order at the time the court entered it, the record reflects that defense counsel received notification of, and agreed to, the sentence modification. *See Zoll*, ¶¶ 22, 25, 425 P.3d at 1127 (holding that a violation of the defendant's due process rights was harmless beyond a reasonable doubt in part because defense counsel was present for, and represented the defendant at, the relevant proceeding).

¶ 27 Finally, as the prosecutor argued, even if Milsap did not learn of the sentence modification until he entered SOISP, he did not timely assert his objection to the April order as impermissibly entered without his knowledge and outside his presence. Milsap's failure to timely object suggests that he approved of the sentence modification when he learned of it. *See People v. Petschow*, 119 P.3d 495, 499 (Colo. App. 2004) (explaining that, without the contemporaneous objection rule, "a defendant could intentionally withhold an objection to a constitutional deficiency, on appeal argue that the error was not harmless beyond a reasonable doubt, and thus, unfairly manipulate the judicial process").

¶ 28    Thus, we conclude that any violation of Milsap's due process rights when the court entered the April order was harmless beyond a reasonable doubt.

¶ 29    Lastly, despite framing his argument as a constitutional due process violation claim, Milsap also relies on the statutory notice requirement under section 18-1.3-204(4)(a), C.R.S. 2025.  To the extent Milsap intended to assert a separate statutory notice violation, *see, e.g.*, *People v. Calderon*, 2014 COA 144, ¶¶ 24-28, 356 P.3d 993, 996-97, we conclude that, for the reasons set forth above, Milsap failed to establish prejudice resulting from the alleged violation.  *See People v. Cardenas*, 2015 COA 94M, ¶ 18, 411 P.3d 956, 962 ("Harmless error analysis generally applies to violations of statutory rights."); *see also* Crim. P. 52(a) (requiring that, when reviewing for harmless error, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"); *Hagos*, ¶ 12, 288 P.3d at 119 ("Under [the nonconstitutional harmless error] standard, reversal is required only if the error affects the substantial rights of the parties.").

## C.    The District Court Did Not Err
by Revoking Milsap's SOISP Sentence

¶ 30    We next consider — and reject — Milsap's argument that the court erred by granting the probation officer's complaint to revoke Milsap's SOISP sentence.

¶ 31    Probation is a privilege, not a right. *Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002). "The issues for determination in a probation revocation proceeding are whether the defendant has violated a valid condition of his . . . probation and, if so, what action is appropriate in light of the violation." *People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994).

¶ 32    "The question whether probation has been violated is one of fact for the trial court . . . ." *People v. Elder*, 36 P.3d 172, 173 (Colo. App. 2001). We defer to a court's factual findings if competent evidence in the record supports them. *People v. Pitts*, 13 P.3d 1218, 1221 (Colo. 2000).

¶ 33    A court possesses the discretion to revoke or continue the probation of an offender who violates a condition of probation. § 16-11-206(5), C.R.S. 2025; *Elder*, 36 P.3d at 173-74. In determining whether to revoke probation, "the sentencing court

balances the probationer's interest in demonstrating a responsible lifestyle with society's interest in seeking protection against the possibility of recidivism." *Byrd*, 58 P.3d at 55. The decision to revoke a defendant's probation is within the court's discretion, and we will not disturb it unless "the trial court's judgment is against the manifest weight of the evidence." *Elder*, 36 P.3d at 173-74.

¶ 34    Milsap does not challenge the court's finding that he violated his SOISP conditions. Rather, he asserts that the court's revocation of his SOISP sentence was against the manifest weight of the evidence because he substantially complied with the SOISP conditions: (1) he only had one positive drug test; (2) he did not appear on time for one scheduled appointment with his probation officer, although he met with the officer at a different appointment later that same day; (3) he had obtained permission to leave Colorado to attend his sister's funeral, although he left the state before signing the required documents; and (4) he was compliant with sex offender treatment until he left Colorado for the funeral. We perceive no error.

¶ 35    At the revocation hearing, a probation supervisor testified that Milsap submitted one drug test positive for cocaine and that he

missed two appointments with his probation officer. The supervisor acknowledged that, after missing one of the appointments, Milsap attended an appointment later that same day.

¶ 36    The probation supervisor further testified that Milsap left Colorado to travel to his sister's funeral without approval because he had not submitted a safety plan or secured a travel permit. Furthermore, after leaving the state, Milsap stopped communicating with the probation department.

¶ 37    In addition, the probation supervisor testified that Milsap failed to complete sex offender treatment successfully. The prosecution submitted as an exhibit the discharge report from Milsap's sex offender treatment facility. Contrary to Milsap's representation, he was not in compliance with his treatment at the time he left Colorado:

> This unsuccessful discharge is in response to Mr. Milsap's violation of treatment and intervention contracts, accrual of absences while on intervention contracts, going to unapproved locations, tattooing without permission from his Community Supervision Team (CST), accessing the internet and social media without permission or monitoring services in place, and a lack of transparency with his treatment team.

¶ 38    The report says that, although Milsap "initially reported motivation and desire to be compliant in treatment," he accrued ten absences, four of which occurred while he was on a "no-tolerance treatment intervention contract." According to the report, Milsap demonstrated "a pattern of poor communication skills, a lack of accountability for his responsibility while in treatment and in the community, a lack of motivation to adhere to rules and restrictions of supervision and treatment, and a lack of transparency with his CST." This behavior was problematic because "[o]ffense-specific treatment is only effective when a person is willing to engage in the process, demonstrates compliance with supervision and treatment requirements, and possesses the internal motivation to make effective change." The last part of the report contains a detailed explanation of Milsap's noncompliance with treatment.

¶ 39    For these reasons, the report concludes that Milsap "does not appear appropriate for community-based offense-specific treatment at this time and may benefit from a higher level of structure or containment." After the supervisor testified, the prosecution called Milsap as a witness. Milsap invoked his Fifth Amendment right to remain silent in response to the following questions: (1) whether he

was aware of, and signed, the conditions of SOISP; (2) whether he asked probation if he could travel to Oklahoma; (3) whether he failed to appear for a probation appointment; (4) whether he stopped reporting to, and communicating with, probation; and (5) whether he was unsuccessfully discharged from sex offender treatment. *See Byrd*, 58 P.3d at 56-57 (concluding that because "the rights extended to a probationer are significantly reduced when compared to the accused facing criminal charges," the Fifth Amendment "permits a probationer to decline to answer specific questions at the revocation hearing, but this refusal to answer may be used against [him] to revoke probation"). Thus, Milsap's invocation of his Fifth Amendment rights at the revocation hearing further supported the probation officer's arguments for revocation of Milsap's SOISP sentence. The court found that Milsap violated his SOISP conditions by leaving the state without authorization, failing to report to probation, and being unsuccessfully discharged from sex offender treatment. At the resentencing hearing, the court indicated that it had reviewed the record, an updated sex-offense specific evaluation, and an updated presentence investigation report that "outline[d] [Milsap's] history prior to this case and then

24

subsequent to this case." And, significantly, the court noted that Milsap had recently been charged with new offenses against "a separate intimate partner." The court found that Milsap's underlying conduct was a "significant event" and that he had been involved in another incident involving the same woman he had threatened with a machete and sexually assaulted. The court also referenced comments Milsap made during his sex-offense specific evaluation, including his recognition that he had difficulty controlling his anger and coping when things did not go his way.

¶ 40    The court then revoked Milsap's SOISP sentence and resentenced him to four years in the DOC. The court explained that, in crafting the appropriate sentence, it had considered Milsap's previous criminal acts against the victim. The court further noted that a probation sentence would not be feasible because Milsap was subject to DOC sentences in separate criminal cases. Lastly, the court recognized that the DOC offered programs that could assist Milsap in addressing the issues he identified in his evaluation.

¶ 41    On this record, we are not convinced that Milsap substantially complied with his SOISP conditions or that, even if he did

25

substantially comply with them, the court's revocation of Milsap's SOISP sentence was against the manifest weight of the evidence. *See People v. Loveall*, 231 P.3d 408, 416 (Colo. 2010) ("[A]ny single probation violation could justify a district court's decision to revoke . . . ."); *Ickler*, 877 P.2d at 866-67 (holding that the court did not abuse its discretion by revoking the defendant's probation because the defendant failed to participate in and cooperate with treatment); *People v. Nance*, 221 P.3d 428, 433 (Colo. App. 2009) ("Since a defendant is not entitled to probation upon resentencing, he . . . has every incentive to abide by the terms of probation to avoid incarceration.").

## III.  Disposition

¶ 42     The order is affirmed.

JUDGE DUNN and JUDGE KUHN concur.